UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HENRY FLOURNOY,<br><br>Plaintiff,<br><br>v.<br><br>ERIC MANESS, et al.,<br><br>Defendants. | No. 2:11-cv-2844-KJM-EFB P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants Sotak and Sahba have filed motions to dismiss plaintiff's Second Amended Complaint. ECF Nos. 62, 63. In response, plaintiff has filed a "Request" asking that any ruling on Sotak's motion be postponed until the close of discovery,[1] ECF No. 67, and an opposition to Sahba's motion, ECF No. 69. For the reasons that follow, it is recommended that Sotak's motion to dismiss be granted with leave to amend and Sahba's motion to dismiss be denied.

/////

/////

---

[1] Such a delay is unnecessary, as "the inquiry under Rule 12(b)(6) is into the adequacy of the pleadings, not the adequacy of the evidence." *Solid 21, Inc. v. Breitling USA, Inc.*, 512 F. App'x 685, 687 (9th Cir. 2013).

## I. BACKGROUND[2]

Plaintiff arrived at Sacramento County Main Jail on October 27, 2009. SAC at 7. He arrived with a wheelchair, as the California Department of Corrections and Rehabilitation had previously diagnosed plaintiff as a "qualified individual with a disability due to being mobility impaired . . . ." *Id.*

On October 28, defendant Bauer attempted to conduct a medical assessment of plaintiff. *Id.* When plaintiff refused, Bauer allegedly offered an ultimatum: plaintiff could either consent to the assessment or lose his wheelchair. *Id.* Plaintiff asserts that he did not consent to the assessment, and two hours later officers confiscated his wheelchair and escorted him to a section of the jail that did not accommodate wheelchair users. *Id.*

On October 29 and October 30, Sotak and Sahba re-prescribed plaintiff's wheelchair and informed him that he could keep it until his medical records arrived. *Id.* at 8. On October 29, Sotak asked plaintiff to sign a consent form so that Sotak could obtain plaintiff's medical records from Sutter General Hospital. *Id.* at 14. When plaintiff refused to sign the consent form, Sotak allegedly responded, "I don't need you permission, I'll get them anyway." *Id.* at 15.

On October 31, plaintiff met with Bauer for another assessment. *Id.* Plaintiff asserts that at that assessment, he was able to stand for just three to five seconds before his legs gave out and claims that Bauer nevertheless discontinued the wheelchair prescription. *Id.* Plaintiff says he was without his wheelchair and crawling across the jail's unsanitized floor for months. *Id.* at 11. As a result, plaintiff allegedly caught the flu and suffered severe depression. *Id.* Five months after Bauer discontinued plaintiff's wheelchair, Sahba allegedly saw plaintiff crawling across the floor but "refused to take necessary measures . . . ." *Id.* at 12. Days after that incident, Sahba met with plaintiff. *Id.* at 13. Plaintiff says he reported unbearable pain after seconds of standing, but Sahba stated she could not help him with a wheelchair because she could not override Bauer's orders. *Id.* at 13.

/////

---

[2] This action proceeds on plaintiff's Second Amended Complaint ("SAC"). *See* ECF No. 22. The following statement of facts is based entirely on the allegations in the SAC.

2

The court screened plaintiff's SAC and found that it stated a potentially cognizable Eighth Amendment deliberate indifference claim against defendant Sahba based on plaintiff's alleged need for a wheelchair, and a due process privacy claim based on defendant Sotak's alleged unauthorized access to plaintiff's medical records.  ECF No. 24 at 1-2; ECF No. 31.

**II.  RULE 12(b)(6) STANDARDS**

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithem*, 395 U.S. 411, 421 (1969).  The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).  The Ninth Circuit has held that the less stringent standard for pro se parties is now higher

in light of *Iqbal* and *Twombly*, but the court still continues to construe pro se filings liberally. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not pled. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## III. ANALYSIS

### A. Sotak's Motion to Dismiss

As noted above, the court screened the SAC and found that plaintiff's allegations were sufficient to state a potentially cognizable due process privacy claim arising out of Sotak's accessing plaintiff's medical records. ECF No. 24 at 1-2; ECF No. 31. Sotak argues that the court should dismiss plaintiff's claim against him because (1) plaintiff's SAC fails to state a claim against him, (2) plaintiff has not exhausted his administrative remedies, and (3) plaintiff has "never effectuated service upon" him. ECF No. 62-1 at 4.

#### 1. Right to Informational Privacy

Despite confronting the notion in three different cases, the United States Supreme Court has never held that the Constitution protects an individual's right to informational privacy. *See NASA v. Nelson*, 131 S. Ct. 746, 751 (2011) ("We assume, without deciding, that the Constitution protects a privacy right of the sort mentioned in *Whalen* [*v. Roe*, 429 U.S. 589 (1977)] and *Nixon* [*v. Administrator of General Services*, 433 U.S. 425 (1977)]."); *see also Nelson*, 131 S. Ct. at 764 (Scalia, J., concurring) ("A federal constitutional right to 'informational privacy' does not exist."). It is unsurprising, then, that the scope of a prisoner's constitutional right to the privacy of his health information is not clearly defined. *See, e.g., Ismail v. Fulkerson*, No. SA CV 10-00901-VBF-AJW, 2014 WL 3962488, at *14 (C.D. Cal. Aug. 12, 2014) (noting that the relevant Ninth Circuit jurisprudence is "unsettled and confusing").

4

The case most relevant to the issue before the court is *Seaton v. Mayberg*, 610 F.3d 530 (9th Cir. 2010). In *Seaton*, "[t]wo psychologists reviewed Seaton's medical records from prison and recommended that he be civilly committed [under California's Sexually Violent Predator Act]. They forwarded their evaluations and the supporting documents to the county district attorney, who then filed a petition to commit Seaton." 610 F.3d at 533. Seaton challenged that disclosure, claiming it violated his right to informational privacy under the Due Process Clause. *Id.* In analyzing the issue, the Ninth Circuit first noted:

> To the extent that his constitutional claim attacks disclosure while he was in prison serving his sentence and for a penological purpose relating to his imprisonment, Seaton's claim falls within the body of law regarding privacy for prisoners, the general principle being that whatever privacy right he has may be overridden for legitimate penological reasons.

*Id.* at 534. The Ninth Circuit then "join[ed] [its] sister circuits in holding that prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them." *Id.*

Interestingly, the first case cited in support of that holding is a Third Circuit opinion that stated the right in the affirmative: "We hold that the Fourteenth Amendment protects an inmate's right to medical privacy, subject to legitimate penological interests." *Doe v. Delie*, 257 F.3d 309, 311 (3d Cir. 2001).[3] Unlike *Doe v. Delie*, the diction in *Seaton* leaves open whether prisoners have a constitutionally protected expectation in prison treatment records even when the state does not have a legitimate penological interest in access to them. Stated otherwise: the holding in *Seaton* addresses only the circumstances prisoners do not have a constitutional right to informational privacy. Subsequent qualifying statements such as "[w]hatever constitutional right to privacy of medical information may exist" and "[a]ssuming for purposes of discussion that Seaton has such a constitutional right," arguably limit the holding of *Seaton*. 610 F.3d at 539.
/////

---

[3] The Ninth Circuit's citation to *Doe v. Delie* in *Seaton* includes a parenthetical with this very quote.

On the other hand, the Ninth Circuit also observed: "Seaton did not plead any facts to rebut the connection between disclosure of his prison treatment records and the State's legitimate penological objectives during his custody." *Id.* at 535. One district court has opined: "It is this language that arguably opens the door to a constitutional challenge to the disclosure of an inmate's medical records under circumstances where an inmate pleads facts indicating there is no legitimate penological interest justifying the disclosure." *O'Neill v. Bannister*, No. 3:12-cv-00030-LRH (WGC), 2012 WL 6968937, at *6 (D. Nev. Aug. 29, 2012). *O'Neill* also details the variance with which district courts throughout the circuit have analyzed such constitutional challenges after *Seaton*. *See id.* at *7; *compare Dushane v. Sacramento County Jail*, No. 2:13-cv-2518 EFB P, 2014 WL 3867468, at *5 (E.D. Cal. Aug. 6, 2014) (dismissing plaintiff's claim without prejudice for failure to allege, *inter alia*, that there was no legitimate penological justification for defendant's conduct) *and Newman v. Poquette*, No. CV 11-3866 ODW (MRW), 2012 WL 487116, at *3 (C.D. Cal. Jan. 12, 2012) (denying defendant's Rule 12(b)(6) motion because plaintiff's complaint "alleged sufficient facts to show that the disclosure of his medical information was unrelated to any penological interest") *with Huling v. City of Los Banos*, 869 F. Supp. 2d 1139, 1155 (E.D. Cal. Apr. 19, 2012) (granting defendants' motion to dismiss on qualified immunity grounds because plaintiff's constitutional right of informational privacy was not clearly established) *and O'Neill*, 2012 WL 6968937, at *9 (denying plaintiff leave to supplement his complaint with an informational privacy claim because defendant would be entitled to qualified immunity on the grounds that "such a right was not clearly established at the time the alleged conduct took place").

### 2. Failure to State a Claim

Sotak argues that the SAC fails to state a claim against him because he had a legitimate penological interest in accessing plaintiff's medical records, "namely, continuity of care." ECF No. 62-1 at 5. While one can readily accept the proposition that accessing medical records necessary to rendering medical treatment is a legitimate penological interest, that is not what plaintiff alleged in the complaint. The court cannot dismiss the SAC on the grounds that Sotak has proffered what he believes to be a legitimate penological interest. *See Knievel v. ESPN*, 393

F.3d 1068, 1076 (9th Cir. 2005) (explaining "the general rule that courts, when ruling on a motion to dismiss, must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint"). However, *Seaton* suggests that the issue is not an affirmative defense but rather, that plaintiffs bear the burden of alleging sufficient facts to show the alleged accessing of the private information was not related to a legitimate penological interest. 610 F.3d at 539; *see also Newman*, 2012 WL 487116, at *3 ("The *Seaton* Court put the burden on the prisoner to plead facts to rebut the connection between disclosure of his prison treatment records and the State's legitimate penological objectives during his custody.") Because the plaintiff has not alleged that there was no legitimate penological justification for Sotak's allegedly unauthorized access of plaintiff's medical files, it is recommended that Sotak's motion to dismiss the informational privacy claim be granted.

### 3. Exhaustion of Administrative Remedies

> Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6). Otherwise, defendants must produce evidence proving failure to exhaust in order to carry their burden.
>
> In a few cases, a prisoner's failure to exhaust may be clear from the face of the complaint. However, such cases will be rare because a plaintiff is not required to say anything about exhaustion in his complaint. As the Court wrote in *Jones*, "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216. But in those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim.

*Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc).

Sotak argues that the court should dismiss the claim against him because this is one of the rare cases in which it is clear from the face of the complaint that plaintiff failed to exhaust his administrative remedies. ECF No. 62-1 at 5. Sotak explains: the SAC states that the Sacramento County Main Jail had a grievance procedure, that plaintiff used that procedure to resolve his

complaints against Sotak, and that Exhibit D to the SAC is the grievance that plaintiff filed against Sotak. *Id.* at 5-6. Sotak notes that not only does Exhibit D not even mention his name, but that it is dated October 28, 2009—a day before plaintiff allegedly refused to sign the consent form authorizing Sotak to obtain plaintiff's medical records. *Id.* at 6.

A thorough review of the SAC indicates that—at least with respect to the claim against Sotak—this is an instance in which the failure to exhaust is clear from the face of the complaint. Under the heading of "Exhaustion of Administrative Remedies," plaintiff explains that he "used the . . . grievance procedure available at Sacramento County Main Jail to try and solve the problems dealing with . . . Sotak." SAC at 23. According to plaintiff, he "presented the facts relating to this complaint" on October 28, 2009, and his grievance was denied the following day. *Id.* Plaintiff supports these claims with a citation to Exhibit D of the SAC. *Id.; see also id.* at 32 (describing Exhibit D as "[g]rievances proving exhaustion of administration remedies for defendants Bauer and Sotak").

Exhibit D is in fact a completed "inmate grievance/suggestion" form bearing plaintiff's name and signature and a date of October 28, 2009. The exhibit describes plaintiff's encounter with Bauer on October 28, but does not mention Sotak or any unauthorized access of plaintiff's medical files. The other exhibits attached to the SAC do not mention Sotak's allegedly unauthorized access of plaintiff's medical files.

"In California, inmate grievances must 'describe the problem and the action requested.'" *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing Cal. Code Reg. tit. 15, § 3084.2). Exhibit D to the SAC—which plaintiff claims "prov[es] exhaustion of administration remedies"—does not comply with this basic requirement, as it makes no mention of any unauthorized access of plaintiff's medical records. Because plaintiff's failure to exhaust his administrative remedies as to the claim against Sotak is clear from the face of the SAC, this claim must be dismissed without prejudice. *See City of Oakland, Cal. v. Hotels.com LP*, 572 F.3d 958, 962 (9th Cir. 2009) ("[F]ailure to exhaust administrative remedies is properly treated as a curable defect and should generally result in a dismissal without prejudice."); *see also Albino*, 747 F.3d at 1170 ("Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim.

8

1  If discovery is appropriate, the district court may in its discretion limit discovery to evidence
2  concerning exhaustion, leaving until later—if it becomes necessary—discovery directed to the
3  merits of the suit.").

### 4. Ineffective Service

5  Sotak also argues that plaintiff has not properly served him because "[t]he U.S. Marshal
6  left copies of the summons and complaint with 'J. Lehr,' at the Sacramento County Sheriff's
7  Department, over two years after Dr. Sotak had ceased working for the Department." ECF No.
8  62-1 at 4. Sotak "requests that the complaint against him be dismissed" because such service fails
9  to comply with Federal Rule of Civil Procedure 4(e) and has not been served within the 120 days
10 mandated by Rule 4(m). *Id.*

11 Plaintiff does not dispute that Sotak was not properly served. ECF No. 67. But plaintiff
12 explains: "When [he] sent in his summons to the US Marshall [on] April 8, 2013, he left the
13 process in the care of the US Marshall and assumed service was complete once he received the
14 rec[ei]pt . . . ." ECF No. 67 at 4; *see also Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir. 1990)
15 (holding "that an incarcerated pro se plaintiff proceeding in forma pauperis is entitled to rely on
16 the U.S. Marshal for service of the summons and complaint"). Plaintiff requests that the court,
17 pursuant to Rule 4(m), extend the time for service because plaintiff has established good cause for
18 failing to properly serve Sotak within 120 days of filing the complaint. *Id.*

19 If plaintiff files a third amended complaint, the court determines that service of the
20 complaint is appropriate for Sotak, and plaintiff files the required papers, the Clerk of the Court
21 will be directed to forward the appropriate documents to the United States Marshal. In that event,
22 the court will grant an extension of the time necessary for the Marshal to complete the process.

### B. Sahba's Motion to Dismiss

24 As noted above, the court previously screened the complaint and found that it stated a
25 potentially cognizable Eighth Amendment deliberate indifference claim against Sahba based on
26 plaintiff's alleged need for a wheelchair. *See* ECF No. 24 at 1-2; ECF No. 31. Sahba argues that
27 the claim against her should be dismissed because the SAC fails to state a claim against her and
28 because plaintiff has failed to exhaust his administrative remedies. ECF No. 63-1 at 3-5.

9

**1. <u>Failure to State a Claim</u>**

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment, or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

Sahba argues that the SAC's factual allegations "do not establish that plaintiff had an objectively serious medical need, or that Dr. Sahba had a culpable state of mind." ECF No. 63-1 at 5. According to plaintiff, standing for just seconds causes his legs to give out and unbearable pain. SAC at 8, 13. Plaintiff alleges that without his wheelchair—which Sahba allegedly allowed plaintiff to continue using after an assessment on October 30, 2009—he had to crawl across the unsanitized jail floor for months. *Id.* at 8, 11. Contrary to Sahba's argument, the SAC describes an objectively serious medical need.

The SAC is also sufficient with respect to Sahba's deliberate indifference. Sahba fails to appreciate that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Harrelson v. Dupnik*,

970 F. Supp. 2d 953, 979 (D. Ariz. 2013) ("The question is whether the risk of harm . . . was so 'obvious' that ignoring it amounted to deliberate indifference."). The SAC alleges that Sahba—despite knowing that plaintiff needed a wheelchair—was not willing to provide plaintiff with a wheelchair on October 31, 2009 or five months after that date. ECF No. 22 at 12-13.

Contrary to Sahba's argument, the SAC states an Eighth Amendment deliberate indifference claim against Sahba.

### 2. **Failure to Exhaust Administrative Remedies**

Sahba also argues, mistakenly, that it is clear from the face of the complaint that plaintiff failed to exhaust his administrative remedies. ECF No. 63-1 at 3; *see Albino*, 747 F.3d at 1169.

The SAC states that plaintiff used the grievance procedure at the Sacramento County Main Jail in attempt to resolve his claims against Sahba. SAC at 23 (citing Exhibit F). Exhibit F is described as a "[g]rievance proving exhaustion of administrative remedies for defendant Sahba." *Id.* at 26. Exhibit F consists of two different grievances. The first is dated January 29, 2010 and describes plaintiff's lack of success in seeing Bauer or another doctor. The grievance refers to a "health issue," but does not provide any details. The second grievance is dated February 7, 2010, but is unreadable. Thus, as submitted, Exhibit F does not indicate that plaintiff has exhausted his administrative remedies for the deprivation of his wheelchair.

But Exhibit D, a grievance dated October 28, 2009, suggests that the claim was exhausted. It describes the conversation in which Bauer threatened to discontinue plaintiff's wheelchair. While it does not state that anyone actually confiscated the wheelchair, at the bottom of the page there is a notation by Sergeant Hufford stating: "Dr. Bauer is in charge of your medical needs. Per his professional advice *your wheelchair is not needed*, and there is no medical need for you to remain on the medical floor." *Id.* (emphasis added).

As noted above, "[i]n California, inmate grievances must 'describe the problem and the action requested.'" *Wilkerson*, 772 F.3d at 839 (citing Cal. Code Reg. tit. 15, § 3084.2). Sahba is correct that none of the exhibits attached to the SAC identify him. The Ninth Circuit, however, has made clear that "[n]either the PLRA itself nor the California regulations require an inmate to identify responsible parties or otherwise to signal who ultimately may be sued." *Sapp v.*

11

*Kimbrell*, 623 F.3d 813 (9th Cir. 2010). Exhibit D sufficiently describes the problem, i.e., Bauer's threat to confiscate plaintiff's wheelchair and plaintiff's need for the chair. Hufford's notation further indicates that plaintiff adequately communicated the problem and the action requested.[4] Accordingly, it does not appear from the face of the SAC that plaintiff has failed to exhaust his administrative remedies with respect to his claim against Sahba.

**IV. CONCLUSION**

Accordingly, plaintiff may either (1) proceed only on the claims in the SAC previously identified as cognizable, or (2) he may amend his complaint to attempt to cure the deficiencies in the complaint's allegations against Sotak. Plaintiff is not obligated to amend his complaint. If plaintiff chooses to proceed only on the claims against defendants Bauer, Kinder, and Sahba, the court will construe plaintiff's election as his voluntary dismissal of any remaining claims, including those against defendant Sotak, without prejudice.

Any amended complaint must be written or typed so that it is complete in itself without reference to any earlier filed complaint. E.D. Cal. L.R. 220. This is because an amended complaint supersedes any earlier filed complaint, and once an amended complaint is filed, the earlier filed complaint no longer serves any function in the case. *See Forsyth v. Humana*, 114 F.3d 1467, 1474 (9th Cir. 1997) (the "'amended complaint supersedes the original, the latter being treated thereafter as non-existent'") (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)). Plaintiff may not change the nature of this suit by alleging new, unrelated claims in an amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

/////
/////
/////
/////

---

[4] *See also* ECF No. 69 at 54 (a February 10, 2010 reply to inmate grievance stating "[t]he documentation in your medical file indicates you have been advised that a wheelchair is not medically indicated at this time as you are able to walk but are not willing to walk.").

## V. RECOMMENDATION

For the reasons stated above, it is hereby RECOMMENDED that (1) Sotak's motion to dismiss (ECF No. 62) be granted with leave to amend, and (2) Sahba's motion to dismiss (ECF No. 63) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 10, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE